**Opinion issued December 11, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00578-CV

———————————

## IN THE INTEREST OF J. D. G AND A. E. G. J., Children

---

### On Appeal from the 314th District Court
### Harris County, Texas
### Trial Court Case No. 2015-03930J

---

## CONCURRING OPINION

Almost three years. That is the time between the filing of this parental-termination suit and the completion of the trial. This is too long. The Legislature attempted to address the harm that can come from excessive delays in these important cases, establishing a one-year statutory deadline for commencing the trial of DFPS-conservatorship and parental-termination suits. *See* TEX. FAM. CODE

§ 263.401(a). This case and others show the need for further legislative action. Parents, children, and potential adoptive parents need these cases resolved more expeditiously, and taxpayers should not bear the extra costs inevitably incurred as a result of delays.

The history behind this statute has been addressed by this Court previously. *See Tex. Dep't of Fam. & Protective Servs. v. Dickensheets*, 274 S.W.3d 150, 158–59 (Tex. App.—Houston [1st Dist.] 2008, no pet.). In 1996, Governor George W. Bush established a committee charged with "identifying ways to reduce legal, judicial and administrative barriers to adoption" for children in DFPS's custody. *Id.* at 158 (quoting TEX. GOV. EXEC. Order No. GWB 96–7 (1996), *reprinted in* GOVERNOR'S COMMITTEE TO PROMOTE ADOPTION, FINAL REPORT at 26). The report recommended that suits concerning children in DFPS conservatorship have established deadlines for "either termination of parental rights or reunification with the family within 12 months of removal." *Id.* at 158 (emphasis omitted) (quoting GOVERNOR'S COMMITTEE TO PROMOTE ADOPTION, FINAL REPORT at 19). Previously, the deadline had been twice as long. *Id.* at 158 n.11. The shorter deadline "was viewed as a necessary step to speed up adoptions and minimize trauma to Texas children." *Id.* at 159. It would "expedite the trial of these cases to help provide a modicum of certainty for children whose family situations are subject to the outcomes in these proceedings." *Id.* Further, the shortened one-year

deadline would allow children in DFPS's conservatorship to be placed "in a permanent family as quickly as possible." *Id.* (quoting GOVERNOR'S COMMITTEE TO PROMOTE ADOPTION, FINAL REPORT at 19).

The Legislature responded one year later, creating a statutory framework to shorten parental-termination suits to one year. TEX. FAM. CODE § 263.401. The legislative goal was to assure that Texas children in the State's custody "are either returned to their parents or adopted as quickly as possible." *Dickensheets*, 274 S.W.3d at 159. This goal would further the "state policy of facilitating permanence and stability in the lives of children subject to DFPS's involvement." *Id.*

As currently worded, the statute provides as follows:

> Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b–1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing [DFPS] as temporary managing conservator, the court's jurisdiction over the suit affecting the parent-child relationship filed by [DFPS] that requests termination of the parent-child relationship or requests that [DFPS] be named conservator of the child is terminated and the suit is automatically dismissed without a court order.

TEX. FAM. CODE § 263.401(a). Thus, Section 263.401 of the Family Code provides that the trial court's jurisdiction ends after one year unless the court "*has commenced* the trial on the merits" or grants an extension. *Id.* § 263.401(a)–(b) (emphasis added). There is no statutory requirement that a commenced trial be completed within any specified period of time. Thus, once trial commences, there is no limit on how long the case may linger in trial. When the case is tried without

3

a jury, this creates the potential that the trial may be commenced timely but that prolonged recesses will break the legislative intent to resolve these cases quickly for the benefit of Texas children and potential adoptive parents.

Even though Section 263.401 was specifically designed to bring about a quick resolution of suits implicating parental rights and to provide permanency and stability for the children subject to DFPS conservatorship, as a practical matter, so long as the trial courts have timely "commenced" the trials, there has been no real impediment to having the children subject to these suits remain in DFPS conservatorship and shuffled from foster home to foster home for two or more years—just as was permissible under the pre-1996 statutory scheme.

In this case, for example, DFPS moved to be named temporary conservator of Andres and Jorge. When the one-year statutory deadline was approaching, the primary permanency goal, as stated by DFPS and as it related to Monica, was family reunification. Yet, DFPS neither pursued a completed trial on parental rights and conservatorship nor returned the children to Monica. Instead, the parties "commenced" trial and the State offered a few exhibits, which were admitted without objection (medical and police records, negative drug test results, and ad litem reports). Additionally, a DFPS caseworker testified for less than five minutes.[1] When she had difficulty constructing the timeline around Andres's

---

[1]    This equated to three pages of trial transcript.

4

injuries, DFPS sought, and the trial court agreed, to allow DFPS to "step back" and resume trial at a later date. Thus, while trial "commenced" in a technical sense, the reality was that this was simply a mechanical, formulaic start of trial that almost immediately fizzled. The trial substance would not occur for another 18 months.

To the extent DFPS or the trial court had reservations, on commencement, that Monica may not have fully completed requirements for reunification, Chapter 263 provided a mechanism to deal with that possibility. *See id.* § 263.403(a), (a–1) (permitting court to retain jurisdiction without dismissing suit or rendering final order while DFPS monitors child's placement with parent during period of transition as parent completes remaining requirements imposed under service plan as necessary for child's return). Yet, DFPS did not pursue monitored transition back to Monica either. After the trial court allowed it to commence trial—thus fulfilling the statutory requirement—it then allowed the case to wait . . . and wait.

In the end, there were only three additional witnesses who testified at the trial, which, on the books, lasted one and one-half years.[2] After these witnesses testified and the parties made their closing arguments, the trial court terminated Monica's parental rights to Jorge and Andres. We have affirmed the trial court's

---

[2] The trial dates and evidence were as follows:

| November 15, 2016 | One witness (3 pages total) |
| January 17, 2017 | Reset without any witness testimony |
| August 24, 2017 | Reset without any witness testimony |
| May 24, 2018 | Three witnesses (36 pages total) |

judgment, concluding that the evidence was sufficient to support (1) termination under Subsection (E) for endangering conduct related to Monica's failure to obtain a medical evaluation or treatment for Andres despite knowledge that Andres—at age two months—had stopped breathing and (2) the trial court's best interest finding under the *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The concern here is not that the delay in resolving this parental-termination suit somehow veered this litigation down a lengthy path to termination in avoidance of a shorter path to reunification: we affirmed termination under Subsection (E), and the delay had no impact on the analysis under that predicate finding. But that is not to say the delay had no impact for the parties involved. More than three years passed between the date of Andres's injuries and the date of termination. During those three years, the boys lived with relatives and then various foster placements, and their interaction with their mother was limited to supervised visits. There is some photographic evidence to suggest that, during that time, the boys were heavily bruised and scratched while under the care of one foster placement from which they were subsequently removed.

The delay proved problematic to Monica as well. One of Monica's DFPS family-service-plan requirements was that she maintain stable housing. The record indicates that Monica had maintained stable housing for the full twelve-month

6

period envisioned by Section 264.401 for resolving conservatorship and parental rights, and for an additional 22 months. During the final month of trial, when the last three witnesses testified, she encountered difficulty with her housing and moved in with a cousin. This late development—18 months into trial—provided DFPS a new basis to assert that Monica had failed to comply with her family service plan and to pursue termination under Subsection (O) on that basis.

Compounding the issue, DFPS argued that a statutory affirmative defense to termination under Subsection (O) (for parents' good-faith efforts to comply and no-fault lapses) was unavailable to Monica because she had never pleaded the defense, presumably having failed to anticipate breaking her lease more than a year after trial "commenced." *See id.* § 161.001(d) ("A court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of evidence that: (1) the parent was unable to comply with specific provisions of the court order; and (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.").

It is foreseeable that, if a parental-termination case is drawn out for years, there may be bumps in the road for the parent seeking reunification, given the demands that are imposed by family service plans. The potential for termination

due to a late-date lapse of a family-service-plan requirement that had already been found to have been satisfied is concerning—even more so if the late nature of the development hampers access to an arguably relevant affirmative defense to the termination grounds.[3]

We have seen this process of commencing trial followed by long delays before the trial is completed in other nonjury parental-termination cases appealed to this Court. For example, in *In re J.I.T.*, No. 01-17-00988-CV, 2018 WL 3131158 (Tex. App.—Houston [1st Dist.] June 27, 2018, no pet. h.) (mem. op.), the trial court extended the one-year deadline by six months. It then held the first day of trial without any witness testimony, and it held a second day of trial—one week later—with only two pages of testimony and one exhibit offered without foundation or objection. The third day of trial was not until two months later. There were no witnesses that day. The next witness did not testify until two additional weeks had passed. Thus, the trial began in earnest nearly seven months after the statutory deadline to commence trial. The emotional turmoil for the parents and children and the additional expense caused by this fractured process were undoubtedly substantial.

---

[3] As noted, termination was affirmed under Subsection (E); therefore, the issues related to the Subsection (O) basis for termination, and any defenses thereto, were not reached in the panel's opinion.

There are other similar cases, but these two suffice to show that the "commences the trial" provision of Section 263.401 is, in practice, providing a loophole to extend termination trials in nonjury cases instead of effectuating the Legislature's goal of a timely determination of parental rights to allow for permanency for the children involved. There are financial repercussions as well: repeated trips to the courthouse to present only minimal evidence as all parties wait out what, in practice, is a much longer process, further increases the cost of attorney's fees for all parties involved.

I urge the Legislature to address the practical realities of how Section 263.401 is being implemented. It is for the Legislature, and not the courts, to craft a statutory solution to the lingering suits we see at the appellate courts. I note one method the Legislature has used in the past is to place reporting requirements on the courts to incentivize timely resolution of other categories of cases it has deemed need speedy resolution. *See* TEX. GOV'T CODE §§ 72.082, 72.084 (requiring courts of appeals to report monthly on number of unresolved cases and number of days between submission and disposition); *see also* TEX. R. JUD. ADMIN. 6.2(a) (requiring intermediate appellate courts to finally dispose of parental-termination appeals within 180 days); Order Accelerating Juvenile Certification Appeals and Requiring Juvenile Courts to Give Notice of the Right to an Immediate Appeal, Misc. Docket No. 15-9156 (Tex. Aug. 28, 2015) (requiring

intermediate appellate courts to finally dispose of minor-certification appeals within 180 days).

Just as there are good reasons for not meeting these deadlines in appellate courts on occasion, there are undoubtedly good reasons for a trial court, on occasion, to not complete a nonjury parental-termination trial within a short time after the one-year mark for beginning the trial. Sometimes delays are for the benefit of the parents or the children. But reporting instances of delayed resolution to the Legislature would create an incentive for trial courts to meet the Legislature's goal of speedy resolution of these cases for the benefit of all involved: the parents, any prospective adoptive parents, and, most importantly, the children.

## Conclusion

With these concerns in mind, I concur.

Harvey Brown
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Brown, concurring, joined by Justice Keyes.